IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK CHASE,

    *Plaintiff*,

    v.

                                       Civil Action No. ELH-11-1771

TOWN OF OCEAN CITY,
MARYLAND,

    *Defendant*.

**MEMORANDUM**

On June 17, 2015, the Town of Ocean City, Maryland ("Ocean City" or the "Town")

filed a "Motion To Modify Preliminary Injunction And Consent Decree" ("Motion," ECF 26),

pursuant to Fed. R. Civ. P. 60(b)(5), along with a legal memorandum ("Memo," ECF 26-1) and

voluminous exhibits. *See* ECF 26-2 to ECF 26-14. The Motion is rooted in a suit filed against

the Town in 2011 by Mark Chase, plaintiff.[1] It resulted in a Preliminary Injunction issued by

this Court on September 9, 2011 (ECF 16), and culminated in a Consent Decree entered on

February 6, 2012 (ECF 23).

In the Motion, the Town seeks to modify and/or to vacate the Preliminary Injunction and

the Consent Decree, because of the passage of an ordinance (Ordinance 2015-11) enacted by the

Mayor and City Council of Ocean City, effective July 27, 2015 ("New Ordinance"). Among

other things, the New Ordinance repealed the ordinance at issue in both ECF 16 and ECF 23.

ECF 26 at 1-2. Chase did not respond to the Town's Motion.

---

[1] This case was closed in 2012. But, on July 15, 2015, the Town filed a motion to reopen
the case. ECF 34. I granted that motion. ECF 36.

In response to an Order issued by this Court on July 2, 2015 (ECF 33), the Town also submitted a "Memorandum . . . Regarding Authority And Justiciability." ECF 35 ("Justiciability Memo"). In the Justiciability Memo, the Town explains that the New Ordinance "substantially amended, reorganized and recodified the sections in Chapter 62 [of the Town's Code, at issue in the Preliminary Injunction and Consent Decree,] so that different substantive provisions are contained under the section and subsection numbers." *Id.* at 4. In the Town's view, "the new provisions in Chapter 62 are constitutional," *id.*, and "it is entitled to a decision whether its enforcement of the New Ordinance would violate the Consent Decree . . . ." *Id.* at 8; *see also id.* at 9. Claiming that the issues in the Motion are justiciable, Ocean City maintains that the Court has the authority to modify the Consent Decree and allow enforcement of the new law. Alternatively, Ocean City urges the Court to vacate the Consent Decree on the ground that it is now moot. *Id.* at 9, 11; *see also* ECF 35-5 at 2 (proposed Order). Chase did not respond to the Justiciability Memo.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## Factual Background

The underlying facts and the reasoning that culminated in the Preliminary Injunction and the Consent Decree are fully set forth in this Court's Memorandum Opinion filed on September 9, 2011. *See* ECF 14; *see also Chase v. Town of Ocean City*, 825 F. Supp. 2d 599 (D. Md. 2011). To the extent relevant, the underlying facts, as set forth in ECF 14, are incorporated herein.

The Town is a municipal corporation located in Worcester County on Maryland's Eastern Shore.  ECF 26-2 (Affidavit of Diana Chavis, Town Clerk) at 1.  It borders the Atlantic Ocean, and is one of Maryland's "major summer vacation destinations. . . ."  *Id.*  Some eight million people visit Ocean City annually, mostly between mid-May and mid-September.  *Id.*

One of the Town's prime attractions is the so called "Boardwalk," a three-mile "manmade promenade," *id.*, that is between 50 and 75 feet wide.  ECF 14 at 3.  The Boardwalk is "bounded by the beach to the East" and runs parallel to it.  ECF 26-2 at 1.  It is "home" to many stores, "eateries," and other "attractions."  *Id.* at 2.  In addition, it "serves as the primary ingress and egress route for the Town's emergency response units" to the adjoining beach.  *Id.* at 1-2.  The Town also operates a "tram" on portions of the Boardwalk as a means of public transportation.  ECF 14 at 3.  And, of import here, the Boardwalk provides "a forum for . . . expressive activities."  ECF 26-2 at 2.

In general, the volume of pedestrian traffic on the Boardwalk leads to "considerable congestion" during the summer season.  ECF 26-2 at 2.  Over the years, the Town has attempted to address various issues pertaining to and arising from public use of the Boardwalk.  The enactment of an ordinance in 2011 that pertained to use of the Boardwalk resulted in the litigation initiated by Mark Chase in 2011.

Chase, a "visual artist" (ECF 1 at 2), is a "self-described 'spray paint can artist'" and "street performer."  ECF 14 at 1; *see also* ECF 23 (transcript of preliminary injunction hearing) at 4.  In his suit against Ocean City (ECF 1), Chase alleged that the ordinance enacted by the Town in 2011, concerning use of the Boardwalk, violated his right to free expression, as guaranteed by the First Amendment to the United States Constitution and Article 40 of the

Maryland Declaration of Rights. *Id.* The 2011 provisions at issue were embodied in the Code of the Town of Ocean City ("Code"), Ch. 62, "Peddlers and Solicitors" (1999, Supp. No. 18, May 16, 2011) ("Old Ordinance"). Contemporaneous with the filing of his Complaint, Chase filed a "Motion For Preliminary Injunction" (ECF 2) to enjoin enforcement of Chapter 62 of the Code.

In general, the Old Ordinance created restrictions on the activities of "peddling, soliciting, hawking or street performing" on the Boardwalk. Code, § 62-5. Among other things, the provisions required all street vendors and performers on the Boardwalk to confine their activities to the ends of streets ("Street Ends"), and excluded any performance at North Division Street; required all solicitors, including street performers, to obtain a license from, or register with, the Town; and banned all sales of artistic work on the Boardwalk by street performers and vendors.

On August 23, 2011, the Court held an evidentiary hearing with respect to the preliminary injunction motion. ECF 7; *see also* ECF 25 (transcript). On September 9, 2011, the Court issued a Memorandum Opinion (ECF 14) and an Order (ECF 15) granting plaintiff's Motion for Preliminary Injunction in part and denying it in part.

I ruled, *inter alia*, that the Town could not prohibit "protected expressive conduct" by street vendors. ECF 14 at 42-43. Therefore, I determined to enjoin preliminarily the enforcement of Code, §§ 62-2, 62-4, and 62-5(9), "as applied to the sale of items that have been created, written, or composed by the vendor; are inherently communicative; and have only nominal utility apart from their communicative value." *Id.* ("Expressive Materials"); *see also* ECF 16 ¶ 2 (defining "Expressive Materials"). Moreover, I determined that the registration requirement was unconstitutional because it was overbroad and failed to strike a balance between

the right to free speech and the purported governmental interests that the Town sought to further. *Id.* at 44, 48.   However, I found other provisions of Chapter 62 constitutional and necessary to protect public health and safety.   *See*, *e.g.*, ECF 14 at 30 (discussing Code § 62-5(b)(1)).   For example, I upheld a portion of the Ordinance barring street performances from the Boardwalk at North Division Street.   *Id.* at 29-31.

Accordingly, I issued a Preliminary Injunction (ECF 16) that enjoined enforcement of the following Code provisions:  § 62-2, as applied to any person engaged in the public sale, rental, or exchange for a donation of "Expressive Materials," as that term was defined in paragraph 2 of the Preliminary Injunction; § 62-3; § 62-4, as applied to any person engaged in the public sale, rental, or exchange for a donation of "Expressive Material"; § 62-5(b)(9), as applied to any person engaged in the public sale, rental, or exchange for a donation of "Expressive Material"; § 62-5(b)(10); and § 62-7, as applied to any person who, in the absence of the injunction, would be required to register as an "unlicensed solicitor" pursuant to § 62-3.  *See* ECF 16.   And, the Preliminary Injunction specifically stated, ECF 16 at 3:  "This Preliminary Injunction does not prohibit the enforcement of any provision of the Code of the Town of Ocean City, Maryland, other than the provisions expressly enumerated herein."

Thereafter, on February 6, 2012, the parties entered into a Consent Decree, consistent with the Preliminary Injunction, which was approved by the Court.   ECF 23.   Among other things, the Consent Decree required the Town to permit the sale of expressive materials on the Boardwalk, without a license or registration.   However, the Consent Decree did not bar the Town from confining performances and sales of expressive materials to areas of the Boardwalk at certain Street Ends, for public safety reasons.   The Consent Decree also provided in ¶ 2 that it

"shall be in effect permanently . . . unless it is dissolved, amended or otherwise modified by subsequent Order of this Court."   ECF 23 at 1-2.   In addition, by its terms the Court "retain[s] jurisdiction over this matter and the parties for purposes of enforcing compliance with the Consent Decree. . . ."   *Id.* at 2.

The Town represents that it has fully complied with the Consent Decree, which pertains to the Old Ordinance.   ECF 35 at 3.   On June 15, 2015, the Mayor and City Council enacted Ordinance 2015-11, titled "Boardwalk Performing and Vending," *i.e.*, the New Ordinance.   *See* ECF 26-2 at 4; ECF 26-4.   Among other things, it expressly repealed the Old Ordinance.   *Id.*   As noted, the New Ordinance, contained in Chapter 62 of the Code, went into effect on July 27, 2015.   ECF 26 at 2.

The New Ordinance appears to have been the product of careful thought and considerable effort.   Ocean City adopted a Resolution on January 20, 2015, by which it created a Task Force to engage in a study of issues concerning the Boardwalk, hold public hearings, and make recommendations in connection with Boardwalk regulations.   ECF 26-2 at 2; ECF 26-9; *see* ECF 26-1 at 10 n.1 (delineating issues the Task Force was asked to address).   Notably, Mr. Chase served as one of five members of the Task Force, appointed by the Mayor.   ECF 26-12 at 6-7.   A total of 28 witnesses, including law enforcement and beach patrol personnel, town merchants, street performers, restaurant and hotel owners, and boardwalk visitors, testified before the Task Force during the course of four hearings.   *See* ECF 26-1 at 9; *see also* ECF 26-2 at 2; ECF 26-8 (hearing transcripts); ECF 26-10; ECF 26-11.   The Task Force also received written submissions and exhibits.   *See* ECF 26-2 at 3; ECF 26-10; ECF 26-11.

On April 13, 2015, the Task Force issued its "Report of the Town of Ocean City, Maryland Task Force On Boardwalk Regulation," which exceeded 70 pages, and which included proposed changes to Boardwalk performance and vending laws.   ECF 26-12 ("Task Force Report"); *see also* ECF 26-2 at 3.   With respect to four issues, Mr. Chase dissented from the Task Force Report.   *See* ECF 26-13; ECF 26-2 at 3; ECF 26-1 at 24-26.   In particular, he opposed (1) the recommended ban as to the use of generators on the Boardwalk by performers; (2) the recommended ban on the use of ropes by performers to cordon off performance areas; (3) the elimination of Third Street as a potential performance area; and (4) the proposed selection and assignment system for use of performance spaces between and including South First Street and Ninth Street.   ECF 26-13 at 1-4; ECF 26-1 at 24.

Thereafter, the Town Attorney undertook a comprehensive review of the Task Force Report to assess its constitutionality and legality.   He submitted a report to the Mayor and City Council, dated April 23, 2015.   *See* ECF 26-14; ECF 26-2 at 3-4.   The Town Attorney accepted many of the recommendations in the Task Force Report but also agreed with Mr. Chase as to some matters.   ECF 26-1 at 29; *see* ECF 26-14.   He made various recommendations, including the elimination of a proposed requirement for proof of insurance by street performers.   ECF 26-1 at 33; ECF 26-14 at 6-7.[2]   In addition, he provided a proposed ordinance repealing the Old Ordinance, among other things.   ECF 26-2 at 4.

On June 15, 2015, the City Council passed the New Ordinance (ECF 26-4), repealing Chapter 62 of the Code (*i.e.*, the Old Ordinance) and, in its place, enacting a new set of

---

[2]   The Town's Memorandum of Law, ECF 26-1, carefully reviews the various recommendations of the Town's attorney.

regulations under Chapter 62. *See* ECF 26-2 at 4. As noted, the New Ordinance went into effect on July 27, 2015. ECF 26 at 2. The Town points out that, as a result of Chase's objections to the Task Force Report, the New Ordinance allows performers to use generators on the Boardwalk, but not to refuel them while on the Boardwalk. ECF 26-1 at 24-25. Moreover, performers are not barred from using ropes to demarcate their spaces. *Id.* at 25. And, with respect to the proposed removal of Third Street as a performance area, Chase's position "also won acceptance from the Town. . . ." *Id.*

In sum, the major provisions of the New Ordinance include the following: a definition of Expressive Materials, performers, and vendors; a process for space selection for use of congested areas during the summer; a rotation system for performers; the closure of Dorchester Street for use by performers, in addition to North Division Street, for safety reasons; and various miscellaneous restrictions pertaining to items such as the ban on refueling of generators on the Boardwalk; performance hours; height restrictions; and prohibition of performances that involve touching. *See* ECF 26-4.

To avoid any claim that the Town had failed to abide by the Preliminary Injunction and/or the Consent Decree, the Town filed its Motion prior to the effective date of the New Ordinance, seeking a ruling from this Court "that the Ordinance complies with the Court's directives." ECF 26-1 at 35. In response to the filing of the Motion, the Court held a telephone conference with all counsel on July 2, 2015, including counsel for Mr. Chase, and set a briefing schedule. ECF 33. Mr. Chase had until August 5, 2015, to respond, *id.*, but did not do so.

**Discussion**

As noted, the Town has repealed the Old Ordinance, and it was the Old Ordinance that was the subject of the Court's earlier rulings in ECF 16 and ECF 23.  In its place, the Town has enacted a New Ordinance, carefully screened and vetted by the Town's legislative body, citizens, and the Town's Attorney.  No challenge has been lodged by Mr. Chase or anyone else as to the legality of the New Ordinance with respect to the First Amendment or on any other basis.

Fed. R. Civ. P. 60(b)(5) provides: "On motion and just terms, the court may relieve a party . . . from a final judgment [or] order . . . ." if "(5) . . . applying it [*i.e.*, the judgment or order] prospectively is no longer equitable[.]"[3]  According to the Town, prospective enforcement of the Consent Decree is no longer equitable, given the enactment of the New Ordinance.  ECF 26-1 at 6.

"Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law render continued enforcement detrimental to the public interest."  *Horne v. Flores*, 557 U.S. 443, 447 (2009) (quotations omitted); *see also Agostini v. Felton*, 521 U.S. 203, 215 (1997) (stating that a Rule 60(b)(5) motion is appropriate "when the party seeking relief from an injunction or consent decree can show a 'significant change either in factual conditions or in law'") (citation omitted).

---

[3] The Town does not rely on Rule 60(b)(6), which permits a court to grant such relief for "any other reason that justifies relief."

Of course, the Court never contemplated that Ocean City would be unable to revise or modify old laws, nor was it barred from enacting new laws concerning the Boardwalk. To the extent that Ocean City's New Ordinance does not alter the terms of the Old Ordinance that were the subject of the Consent Decree and the Preliminary Injunction, those orders remain valid and binding. But, to the extent that the Town has enacted a new law, no case or controversy is now pending before the Court as to the legality of such new provisions; no challenge has been lodged to the New Ordinance. In my view, through its Motion, the Town prophylactically seeks an advisory opinion from this Court as to the legality and constitutionality of the Town's New Ordinance. I decline to issue one.

Article III of the Federal Constitution limits judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). In *Arizona Christian Sch. Tuition Org. v. Winn*, ____ U.S. ____, 131 S. Ct. 1436, 1442 (2011), the Court said: "Continued adherence to the case-or-controversy requirement of Article III maintains the public's confidence in an unelected but restrained Federal Judiciary. . . . For the federal courts to decide questions of law arising outside of cases and controversies would be inimical to the Constitution's democratic character." *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (stating that Article III standing "enforces the Constitution's case-or-controversy requirement"), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ____ U.S. ____, 134 S. Ct. 1377, 1387-88 (2014); *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (stating that, under Article III of the Constitution, "'the exercise of judicial power depends upon the existence of a case or controversy'") (quoting *DeFunis v. Odegaard,* 416 U.S. 312, 316 (1974)); *Miller v. Brown*, 462

F.3d 312, 316 (4th Cir. 2006) (stating that Article III "gives federal courts jurisdiction only over cases and controversies") (internal quotation marks and citations omitted).

Therefore, during the pendency of a case, an actual controversy must exist. *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974); *Williams v. Ozmint*, 716 F.3d 801, 808 (4th Cir. 2013). In the absence of a case or controversy, "the litigation is moot, and the court's subject matter jurisdiction ceases to exist . . . ." *S.C. Coastal Conservation League v. U.S. Army Corps. of Eng'rs*, 789 F.3d 475, 482, (4th Cir. 2015); *see Gardner v. GMAC, Inc.*, ____ F.3d. ____, 2015 WL 4646863 at *3 (4th Cir. Aug. 6, 2015) (stating that, in the absence of a case or controversy, the court lacked subject matter jurisdiction).

A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.,* 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).[4] For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937); *see also Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Indeed, "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary juridical pronouncements on even constitutional issues obtained . . . ." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990). When

---

[4] To be sure, there is a narrow exception to the mootness doctrine, in those cases where a wrong is "capable of repetition yet evading review." *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011). This exception does not appear applicable in the context of this case.

developments occur during the course of a case that prevent the court from being able to grant the requested relief, the case must be dismissed. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968).

Related principles help to inform this Court's analysis. For example, the doctrine of standing consists of two distinct "strands": constitutional standing pursuant to Article III and prudential standing. *Elk Grove Unified Sch. Dist.*, 542 U.S. at 11. The requirements for constitutional standing reflect that Article III "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984*), abrogated in part on other grounds by Lexmark Int'l, Inc.*, *supra*, 134 S. Ct. 1377; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1993) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III[.]"); *Southern Walk at Broadlands Homeowner's Assoc. Inc. v. Openband at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

The concept of standing generally arises in regard to a plaintiff's right to sue. In order to satisfy the Article III standing requirement, a plaintiff must satisfy three elements. *See Lujan*, 504 U.S. at 560. They are, *id.* (internal quotation marks and citations omitted):

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*See also Susan B. Anthony List v. Driehaus*, ____ U.S. ____, 134 S. Ct. 2334, 2341 (2014) (stating that one requirement of Article III standing is that the plaintiff suffer an "injury in fact"); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Cahaly v. Larosa*, — F.3d —, No. 14-1651, 2015 WL 4646922 at *5 (4th Cir. Aug. 6, 2015);

*Lane v. Holder*, 703 F.3d 668, 671 (4th Cir. 2011); *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011).

The recent case of *Hollingsworth v. Perry*, ____ U.S. ____, 133 S. Ct. 2652 (2013), is informative.  There, the Supreme Court said:  "The Article III requirement that a party invoking the jurisdiction of a federal court seek relief for a particularized injury serves vital interests going to the role of the judiciary in our system of separated powers."  *Id.* at 2667.

To be sure, the injury-in-fact requirement is somewhat relaxed in First Amendment cases. *See Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984); *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) ("The leniency of First Amendment standing manifests itself most commonly in the doctrine's first element: injury-in-fact."); *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) ("[W]hen a challenged statute risks chilling the exercise of First Amendment rights, the Supreme Court has dispensed with rigid standing requirements. . . .") (internal quotation marks and citation omitted).  Therefore, when a plaintiff alleges that state action has chilled his speech, he need not "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459, (1974); *see Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012).

Rather, in the First Amendment context, a plaintiff may satisfy the injury-in-fact requirement by showing: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute" and (2) "a credible threat of prosecution thereunder . . . ." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *accord Cooksey*, 721 F.3d at 237. The mere threat of prosecution suffices because such a

threat "tends to chill the exercise of First Amendment rights" and leads to self-censorship, which constitutes an injury in and of itself. *N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999). But, the threatened governmental action need not be a criminal prosecution in order for plaintiff to satisfy Article III's injury-in-fact requirement. *Cooksey*, 721 F.3d at 238 n.5; *see Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012) (holding that threat of disciplinary action by Bar Association satisfied injury-in-fact requirement).

In this case, however, there is no threat of governmental action against Chase or anyone else. There is no alleged injury-in-fact.

In addition to satisfying constitutional standing requirements, a plaintiff must also demonstrate that his claims are not barred by prudential limitations on a federal court's exercise of jurisdiction. *United States v. Windsor*, ___ U.S. ____, 133 S. Ct. 2675, 2687 (2013); *see also, e.g.*, *Elk Grove Unified Sch. Dist.*, 542 U.S. at 11; *Doe v. Sebelius*, 676 F. Supp. 2d 423, 428 (D. Md. 2009). In contrast to Article III standing, prudential standing "'embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk Grove Unified Sch. Distr.*, 542 U.S. at 11 (citation omitted).

One such limitation is that "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This limitation serves to "preclude a court from deciding 'questions of broad social import in cases in which no individual rights will be vindicated'" and to ensure that "'access to the federal courts [is] limited to those litigants best suited to assert the claims.'" *Buchanan v. Consolidated Stores Corp.*, 125 F. Supp. 2d 730, 738 (D. Md. 2001) (quoting *Mackey v. Nationwide Ins. Co.*, 724 F.2d 419, 422 (4th Cir. 1984)).

In this case, neither Mr. Chase nor anyone else has challenged the New Ordinance on the basis of the First Amendment or any other ground.  No individual rights are at issue.  In effect, the Town seeks a ruling on a question of "broad social import."  *See Mackey*, 724 F. 2d at 422.

The doctrine of ripeness "'concerns the appropriate timing of judicial intervention.'" *Cooksey*, 721 F.3d at 240 (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)).  The ripeness doctrine, which overlaps with standing, is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. . . ." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotations omitted).

Generally speaking, "[a] case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (internal quotation marks omitted). On the other hand, a claim "should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Id.* (internal quotation marks omitted).

"Much like standing, ripeness requirements are also relaxed in First Amendment cases." *Cooksey*, 721 F.3d at 240 (citing *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995) ("The primary reasons for relaxing the ripeness analysis in th[e] [First Amendment] context is the chilling effect that potentially unconstitutional burdens on free speech may occasion[.]")). Indeed, "First Amendment rights . . . are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss." 13B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3532.3 at 159 (3d ed. 2004).  Accordingly, in some

15

circumstances, a First Amendment claim may be ripe for review even if the government has not taken enforcement action.

Here, although no one has challenged the Town's New Ordinance, the Town maintains that the matter is ripe for adjudication. Relying, *inter alia*, on *City of Erie v. Pap's A.M.,* 529 U.S. 277 (2000), the Town insists that the "issues presented by the Town's Motion to Modify are justiciable . . . ." ECF 35 at 6.

*Pap's A.M.* concerned a city ordinance that made public nudity a "summary offense." *Id.* at 283. The constitutionality of the ordinance was challenged by Pap's A.M. ("Pap's"), which operated an establishment "featur[ing] totally nude erotic" women dancers. *Id.* at 284. "To comply with the ordinance, these dancers [were required to] wear, at a minimum, 'pasties' and a 'G-string.'" *Id.* Pap's filed suit against the city of Erie, the mayor, and members of the city council, seeking declaratory relief and a permanent injunction barring enforcement of the ordinance as violative of the First Amendment. *Id.*

A Pennsylvania trial court granted the request for injunction and struck the ordinance as unconstitutional. *Id.* On appeal, the Pennsylvania Supreme Court agreed that the ordinance's nudity provision violated Pap's' right to freedom of expression. But, instead of striking the ordinance in its entirety, it severed the offending provisions. *Id.* at 286. The city of Erie sought certiorari, which was granted. *Id.* at 286. Shortly thereafter, Pap's moved to dismiss the case as moot, because its establishment was "no longer operating as a nude dancing club . . . ." *Id.* at 287.

The Supreme Court addressed justiciability and mootness as preliminary matters. *Id.* It explained, *id.* "'[A] case is moot when the issues presented are no longer "live" or the parties

lack a legally cognizable interest in the outcome.'" (Citations omitted).  The Court observed that, "when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated then it becomes impossible for the court to grant any effectual relief whatever to [the] prevailing party[.]"  *Id.* at 287.  (Internal quotations and citations omitted).  Of import here, the Court added, *id.*:  "In that case, any opinion as to the legality of the challenged action would be advisory."

The fractured majority ruled that the issue of the validity of Erie's ordinance remained justiciable, in view of the "concrete stake" that the parties had in the outcome of this case.  *Id.* at 288.  In particular, the Court recognized that the city had an "ongoing injury because it is barred from enforcing" its ordinance.  *Id.* at 288.  Similarly, it observed that, "to the extent Pap's has an interest in resuming operations," it maintained an interest "in preserving the judgment of the Pennsylvania Supreme Court."  *Id.*  As such, the Court found the issue justiciable, not moot, and ultimately upheld the ordinance as a valid, content-neutral regulation.  *Id.* at 302.

The Town attempts to draw a parallel between the instant case and *Pap's*.  It explains: "Should Plaintiff Chase, like the plaintiff in *Pap's A.M.*, decline to take action at this time, the law is clear that such inaction does not prevent this Court's adjudication on the merits of the case."  ECF 35 at 7.

As I see it, the Town's reliance on *Pap's* is misplaced.  The procedural posture and factual circumstances of this case readily distinguish it from *Pap's*.  The *Pap's* Court was not asked to rule on whether an order or injunction should be modified because of the enactment of a new or amended ordinance that repealed the earlier one.  To the contrary, the plaintiff in *Pap's* challenged a particular ordinance, prevailed in the lower courts, and then sought "to have the

case declared moot" when the case reached the Supreme Court.  *Id.* at 288.  Clearly, Pap's had an

"an interest in preserving the judgment" of the Pennsylvania courts and, to that end, it sought to

avoid further judicial review, which might have disturbed the earlier rulings favorable to Pap's.

*Id.*  Conversely, if the case did not proceed, Erie would have been unable to pursue its right to

seek a ruling that would permit it to enforce the law at issue.  In this circumstance, the Court

said:  "Our interest in preventing litigants from attempting to manipulate the Court's jurisdiction

to insulate a favorable decision from further review counsels against a finding of mootness here."

*Id.*

As indicated, there is no challenge in this case to my earlier rulings concerning the Old

Ordinance, nor has anyone challenged the New Ordinance.  Rather, the Town has asked the

Court to construe the New Ordinance and to declare it constitutional, notwithstanding the

absence of a challenge to it.

In my view, the issue presented by Ocean City is plainly not justiciable.  Two cases that

the Court has uncovered provide guidance.

In *Planned Parenthood of Indiana and Kentucky, Inc. v. Commissioner, Indiana State

Dep't of Health*, 13-1335-JMS, 2015 WL 4065441 (S.D. Ind. July 2, 2015), the plaintiff had

successfully challenged the constitutionality of certain provisions of the Indiana Code on equal

protection grounds.  The State of Indiana subsequently moved for relief from judgment under

Fed. R. Civ. P. 60(b)(5), explaining that the Indiana General Assembly had amended the statutes

at issue in the litigation.  *Id.* at *1.  Thus, it urged the court to vacate its permanent injunction and

final judgment.  *Id.*  The state argued it was entitled to relief under Rule 60(b)(5) because the

statutory text cited by the trial court in support of its rulings was subsequently "eliminated from the Indiana Code." *Id.* at *2 (internal quotations omitted).

In declining to grant the Rule 60(b)(5) motion, the District Court said: "All of the Court's decisions in this action, which culminated in a permanent injunction and final judgment . . . were limited to the versions of [the] Indiana Code . . . in effect at that time." *Id.* at *3. It pointed out that the state did not dispute that "'any matter contained in the old section [of the Code] which is not set forth at full length in the amended section ceases to exist.'" *Id.* (citation omitted). The court agreed, stating that the portions of the statute that "served as the basis for the Court's permanent injunction . . . have ceased to exist,[1]" and thus its prior rulings would have no effect on the amended provisions. *Id.* Moreover, the court was of the view that "any further pronouncement by the Court would smack of an improper advisory opinion on the amended statutes." *Id.*

*United States v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164 (D.D.C. 2011), a civil RICO case, is also noteworthy. There, the defendant sought to clarify, reformulate, or vacate an earlier court order that included injunctive measures. *Id.* at 167. The court construed the motion under Rule 60(b)(5) and (6) and denied it.

The District Court noted that the defendants did not ask the court to revisit its order based on "a concrete context or particular factual situation." *Id.* at 169. Rather, they sought "advisory determinations on complex issues" in an effort to "preempt potential future litigation." *Id.* In the court's view, the defendant sought "a blanket ruling" as to the effect of the court's prior order "outside of any specific context." *Id.* at 171. It said, *id.*: "This Court will not issue an abstract

advisory opinion as to the enforceability of [its] Order . . . without the benefit of any factual or procedural context."

In the present posture of this case, I agree with the rationale of the district courts in the cases cited above.  There is no case or controversy here.  Rather, the Town seeks an advisory opinion as to the legality of its New Ordinance, even though no challenge has been lodged.  It is not appropriate for the Court to ascend the pulpit and issue a judicial blessing with regard to the New Ordinance.

For the reasons discussed above, this Memorandum does not address the legality, validity, or constitutionality of the New Ordinance.  In the absence of a case or controversy concerning the New Ordinance, there is no basis for the Court to prohibit the enforcement of any provision of the New Ordinance, except to the extent that any provision in the New Ordinance is the same as a provision that was enjoined in the Preliminary Injunction of September 9, 2011 (ECF 16) or the Consent Decree of February 6, 2016 (ECF 23).

A separate Order follows.


Date:   August 19, 2015                              /s/
                                                      Ellen L. Hollander
                                                      United States District Judge